UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANYA MARIE CRAYTON,

                             Plaintiff,

                                                                <u>DECISION AND ORDER</u>

                                                                   11-CV-6617L

                             v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                             Defendant.
_____

       Plaintiff appeals from a denial of supplemental security income benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

       On July 27, 2009, plaintiff, then forty years old, filed an application for Supplemental Security Income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since June 1, 2009, due to, inter alia, depression, arthritis, "back problems" (scoliosis and pain), anxiety and asthma. (T. 186). Her application was initially denied. Plaintiff requested a hearing, which was held via video conference on March 2, 2011 before Administrative Law Judge ("ALJ") MaryJoan McNamara. (T. 69). The ALJ issued a decision on April 21, 2011, concluding that plaintiff was not disabled under the Social Security Act. (T. 69-79). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 21, 2011 (T. 1-3). Plaintiff now appeals from that decision. The Commissioner has moved (Dkt. #6), and the plaintiff has cross moved (Dkt. #7) for summary judgment. For the reasons set forth below, plaintiff's cross motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4. If the impairment does so, and has continued for the required duration, the claimant is disabled. If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). If the claimant's RFC permits her to perform relevant jobs she has done in the past, she is not disabled. If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986). *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Still, "it is not the

function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

The ALJ summarized plaintiff's medical records, particularly with respect to her scoliosis, which she determined constituted a severe impairment not meeting or equaling a listed impairment. I believe the evidence supports the ALJ's findings concerning plaintiff's exertional limitations, but that the ALJ failed to apply the correct legal standards in analyzing plaintiff's non-exertional limitations. The matter is accordingly remanded for further proceedings.

### I. Plaintiff's Exertional Limitations

In determining plaintiff's RFC, the ALJ considered the medical record, which included treatment notes for diagnoses of, inter alia, scoliosis, asthma (controlled with medication), post-traumatic stress disorder ("PTSD"), bipolar disorder with depression, and anxiety. Based on this evidence, the ALJ determined that plaintiff retained the residual functional capacity to perform light work, with limitations to occasional overhead reaching, handling and fingering, occasional climbing, occasional balancing, stooping, kneeling and crawling, and avoidance of concentrated exposure to respiratory irritants. (T. 72). (The ALJ also listed several as non-exertional limitations, discussed below.) I find the ALJ's determination of plaintiff's exertional limitations is supported by the substantial evidence cited by the ALJ.

Plaintiff challenges the ALJ's assessment of her exertional limitations, arguing that the ALJ failed to evaluate the effect of plaintiff's alleged arthritis on her functional limitations, and that the ALJ should have given controlling weight to the opinion of plaintiff's treating physician, Dr. Walter Stewart Beecher.

Withe respect to plaintiff's claimed arthritis, I note that there is little evidence concerning diagnosis and treatment of arthritis in the record, and that to the extent that arthritis symptoms are

documented, they were included in the exertional limitations found by the ALJ. Although there are indications that plaintiff has pain in her wrists and has utilized knee and left wrist braces in the past, the ALJ discussed these symptoms in her opinion in connection with plaintiff's claims of carpal tunnel syndrome and generalized back, knee and wrist pain, and, with the exception of the opinion of Dr. Beecher, incorporated them into plaintiff's RFC. (T. 76, 77)

The report of plaintiff's treating physician, Dr. Beecher, was rejected by the ALJ. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). *See* 20 C.F.R. § 404.1527(d)(2). In determining the weight to which a treating physician's opinion is entitled, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence supporting the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is rendered by a specialist in a relevant field(s). 20 C.F.R. § 404.1527(d). Further, the ALJ must have clearly articulated her reasons for assigning the level of weight she assigns to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ rejected Dr. Beecher's opinion on the grounds that it was unsupported by medical evidence in the record, and was inconsistent with the opinions of other treating and examining physicians, and plaintiff's own reports of her physical activities. (T. 77). For example, Dr. Beecher opined that plaintiff could "never" twist, stoop, crouch, squat, climb ladders, grasp, turn or twist objects with her hands – but simultaneously opined that plaintiff could perform fine manipulation with her fingers for 50% of a full workday. (T. 369). A report by examining physician Karl Eurenius on August 26, 2009 noted that plaintiff had normal gait, normal stance, could perform a full squat, has full spinal flexion, extension and rotary movement, full lateral flexion and rotation in the low back, full range of movement in her hips, knees, ankles, strength of 5/5 in her upper and lower extremities, and intact hand and finger dexterity and 5/5 grip strength, despite tenderness in

both wrists. (T. 273). Plaintiff's self-reported activities of daily living, including reading books, dressing herself and attending to personal hygiene, loading and unloading laundry from the washer and dryer, grocery shopping and performing light housework, also conflict with Dr. Beecher's opinion that plaintiff can "never" stoop, crouch, squat, or handle items with her hands. (T. 49-52). Finally, there are no objective medical tests or reports supporting the level of postural and manual disability contained in Dr. Beecher's report, and Dr. Beecher did not adjust or increase plaintiff's prescribed back pain medication, or even deem it appropriate to order any testing, imaging studies or x-rays of her back, knees or wrists. (T. 29, 74).

Balancing these factors, I find that the ALJ's rejection of Dr. Beecher's opinion concerning plaintiff's exertional limitations was proper.

Plaintiff also challenges the ALJ's finding that plaintiff's complaints of disabling pain were not wholly credible. "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Cornell v. Astrue*, 2013 U.S. Dist. LEXIS 9513 at *20-*21 (N.D.N.Y. 2013).

Here, the ALJ rejected plaintiff's testimony based on several inconsistencies. Not only did plaintiff's complaints of disabling pain appear to conflict with her medical treatment records, which reflect few complaints and no aggressive or additional treatment for back, knee and wrist pain, as discussed above, but they also contained a number of internal inconsistencies. For example, plaintiff listed, among her activities of daily living, dressing and caring for herself, performing light housework and grocery shopping, and stated that she could lift ten pounds, but later plaintiff testified that the pain in her hands rendered her unable to "even stir food." (T. 33, 52). Plaintiff initially testified that "I try to clean the house the best I can, but what I can't do, my fiancé does for me," but afterwards, in answer to the question of whether she was able to clean the house, replied, "[n]o, my fiancé does all that . .. I can't, like, clean my house . . ." (T. 32, 36). Later, she appeared to reverse course, testifying that when she is wearing her knee braces she can "stand up and vacuum my floors and stuff." (T. 48). Given the inconsistencies between plaintiff's reports of disabling pain, other

- 5 -

testimony by plaintiff and the rest of the record, I find no basis to disturb the ALJ's findings as to plaintiff's credibility.

## II. Plaintiff's Non-exertional Limitations

Plaintiff also alleges that the ALJ failed to apply the Psychiatric Review Technique ("PRT") to her claims of mental disability.

In addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework.'" *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR § 404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document her application of the PRT, and her written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler*, 546 F.3d 260 at 266, *quoting* 20 CFR §404.1520a(e)(2).

Plaintiff's medical records consistently indicate the presence of one or more medically determinable mental impairments, in the form of a history of anxiety, depression and PTSD. Psychiatric assessments by certified social worker Elizabeth Driscoll list diagnoses of anxiety, depression, and PTSD, and recommend treatment with medication, individual therapy and group therapy. (T. 299-307). A Psychiatric Review Technique form completed by non-examining state agency review physician T. Harding notes the existence of affective disorders and anxiety-related disorders, and finds moderate limitations in a number of functional areas. (T. 256). Consultative psychologist Kavitha Finnity examined plaintiff and diagnosed her with bipolar disorder, post-traumatic stress disorder, and generalized anxiety disorder, and recommended psychological and psychiatric treatment. (T. 278). Plaintiff's treating physician, Dr. Beecher, also noted plaintiff's

history of symptoms of a depressive disorder, and prescribed her Prozac and Trazodone, antidepressant medications. (T. 340). As the ALJ noted, plaintiff has commenced – and discontinued – mental health treatment multiple times. (T. 38-41, 72).

Although the ALJ incorporated a number of non-exertional limitations into plaintiff's RFC in deference to the opinions of plaintiff's treating, examining and consulting physicians concerning her alleged mental impairments, (T. 72), the ALJ did not explicitly apply the PRT and her opinion contains no analysis or discussion of the four functional areas.

Thus, while I concur that the ALJ's findings as to plaintiff's exertional limitations are well-supported by substantial evidence of record, the ALJ's failure to apply the PRT in determining the effect, if any, of plaintiff's mental impairments on her RFC necessitates remand of the matter. *See generally Kohler*, 546 F.3d 260 at 266-269; *Moore v. Astrue*, 2013 U.S. Dist. LEXIS 52183 at *21 (N.D.N.Y. 2013). While it may be that application of the PRT yields the same or similar results to those previously reached by the ALJ, the effort is necessary in order to ensure that the agency's ultimate conclusion is grounded by a proper application of the required analytical framework. As such, the matter is remanded for the limited purpose of reviewing the evidence of record with regard to plaintiff's mental functioning in the four areas prescribed by the PRT and making specific findings of fact, incorporating those findings into the plaintiff's RFC, and conducting such other and further proceedings as may be necessary and appropriate.

## CONCLUSION

The Commissioner's motion for summary judgment (Dkt. #6) is denied, the plaintiff's cross motion for summary judgment (Dkt. #7) is granted, and the matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 10, 2013.